# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

SVETLANA GORTEMILLER,

      Plaintiff,

   v.

TYSON FOODS, INC.,[1]

      Defendant.

Case No. 1:23-cv-514

JUDGE DOUGLAS R. COLE

## OPINION AND ORDER

Plaintiff Svetlana Gortemiller brings this employment discrimination suit alleging that Defendant Tyson Foods, Inc. (Tyson) engaged in religious discrimination by failing to accommodate her request for a religious exemption/accommodation to its Covid-19 vaccination requirement. (*See generally* Compl., Doc. 2). Tyson moves to dismiss, (Doc. 3), arguing that: (1) Gortemiller's Title VII claim is untimely because it was filed more than 90 days after she received her right-to-sue letter from the EEOC; and (2) she has failed to plausibly state a claim for religious discrimination because (a) her religious objections to the vaccine are not sincere or at least not the *real* reason she objects to the vaccine, and (b) she suffered no adverse employment action. (*See generally* Doc. 3). The Court disagrees with Tyson and accordingly **DENIES** the Motion to Dismiss Plaintiff's Complaint (Doc. 3).

---

[1] Defendant refers to itself as AdvancePierre Foods, Inc., in its Motion to Dismiss, presumably because that company is the real party in interest to this action. (Doc. 3, #58). The Court refers to Defendant according to the caption in the complaint: Tyson Foods, Inc.

## BACKGROUND[2]

Gortemiller worked in Tyson's research and development department as a food scientist for seven years until her resignation in December 2021. (Doc. 2 ¶ 21, #7; Doc. 3, #60). During the Spring of 2020, Tyson, like many other companies, implemented various safety and sanitation procedures designed to reduce the spread of Covid-19. (Doc. 2 ¶ 22, #7). And Gortemiller, like many other workers during that time, transitioned to telework except for the weekly visits she made to the food laboratory to conduct tests and perform other lab work. (*Id.* ¶ 21, #7).

On August 3, 2021, Tyson announced that it would require all its workers at its U.S. locations to be fully vaccinated against Covid-19 by October 1, 2021. (*Id.* ¶ 15, #6). But it also stated that there would be exceptions to that rule: "Exceptions to the vaccination mandate will involve workers who seek medical or religious accommodation." (*Id.* ¶ 16, #6). The only "accommodation" Tyson offered those employees, though, was an unpaid, unelected, and unprotected year-long leave of absence, with no guarantee that the employee would be able to resume their job after that period of absence. (*Id.* ¶¶ 17–18, #7). And if an employee did not get vaccinated during that period, they would be fired. (*Id.*).

A few days after the announcement, on August 9, 2021, Gortemiller submitted a religious exemption and accommodation request to Tyson. (*Id.* ¶ 24, #8). In that request, she explained (at length) her religious beliefs that required her to refuse the

---

[2] As this matter comes before the Court on a motion to dismiss, it must accept the well-pleaded allegations in the Complaint as true. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). But in reporting the background here based on those allegations, the Court reminds the reader that they are just that—allegations.

Covid-19 vaccination. (Doc. 2-1, #26–45). Gortemiller's primary objection to the vaccine (or vaccines, as there are different versions produced by different companies) was that the mRNA Covid-19 vaccine was either produced with or tested using (depending on which specific vaccine) fetal cell lines harvested from aborted fetuses. (*See id.* at #26–28). This prevented Gortemiller from getting vaccinated because she believes that it is immoral and impermissible to use a human fetus to "rejuvenate" another organism because abortion is a "cardinal sin" that involves the "destruction of a conceived human life." (*Id.* at #26).[3] To explain and further support her beliefs, Gortemiller cited several religious authorities—all from the Eastern Orthodox Christian tradition. She first cited the Social Life Document of the Russian Orthodox Church which explains why practitioners of that religion view "foetal therapy"—or the use of fetal remains or tissue for use in medical research or product development—as immoral. (*Id.*). But she also cited several other statements from eastern churches,[4] including the Greek Orthodox Church, the Romanian Orthodox Church, the Moldovan Orthodox Church, and the Georgian Orthodox Church. (*Id.* at #29–32). These statements provided various religious arguments for why cell cloning, non-consensual tissue transplantation, and non-consensual vaccination are immoral.

---

[3] One of the mRNA vaccine products Gortemiller listed was developed by testing on HeLa cells harvested from an adult woman without her consent. (Doc. 2-1, #29). Gortemiller also objects to taking this mRNA vaccine because it was tested using human tissue that was taken without consent—another thing she claims violates her religious beliefs. (*Id.*).

[4] In her Complaint, Gortemiller describes these other churches as "Catholic institutions," (Doc. 2 ¶ 32, #9–10), which in context obviously means of or relating to the undivided universal church. *See infra* Note 4.

3

(*See id.*). Gortemiller then cited various clergy from these traditions describing similar doctrines. (*See id.* at #32–37).

After describing her religious objections to the Covid-19 vaccine, Gortemiller provided a "list of reasons why it would not impede mission readiness, nor disrupt [her] physical capacity to perform, if [she] d[id] not receive a COVID Vaccine." (*Id.* at #40). She claimed that Covid-19 had a comparably low mortality rate when compared with other viral diseases such as the flu, that Covid-19 primarily posed a danger to elderly individuals, that asymptomatic transmission rates were too low to justify a mandatory vaccination policy, that Covid-19 vaccines have dangerous side effects, and that then-available vaccinations would be obsolete after a virus mutation. (*Id.* at #40–45).

Tyson nominally granted Gortemiller's request for an accommodation but, per its policy, accommodated her beliefs by placing her on an unpaid leave of absence. (Doc. 2 ¶ 36, #10). That leave of absence began October 4, 2021. (*Id.* ¶ 37, #10). A few months later, with no paycheck coming in, Gortemiller resigned in order to access her 401(k) benefits. (*Id.* ¶ 38, #10–11). She then filed discrimination complaints with the Ohio Human Rights Commission and the Equal Employment Opportunity Commission (EEOC). (*Id.* ¶ 40, #11). She received a right-to-sue letter from the EEOC on May 16, 2023. (*Id.*).

A few months later, she filed suit in this Court. Gortemiller's counsel first filed a civil cover sheet on August 14, 2023, but it had no complaint attached. (*See* Doc. 1). She then filed the Complaint the next day, August 15, 2023. (Doc. 2). It asserts two

4

claims: (1) a religious discrimination claim under Title VII of the Civil Rights Act of 1964, compiled at 42 U.S.C. § 2000e, *et seq.*; and (2) a religious discrimination claim under the Ohio Civil Rights Act, Ohio Revised Code § 4112.02. (*Id.* at #17–21).

Tyson moved to dismiss, arguing: (1) that Gortemiller's Title VII claim is untimely because it was filed more than 90 days after she received her right-to-sue letter from the EEOC; and (2) that she fails to state a plausible claim for relief under Title VII and the Ohio Civil Rights Act because (a) her stated religious beliefs are insincere and not the real reason she objects to the Covid-19 vaccine, and (b) she suffered no adverse employment action. (Doc. 3, #66–72). Gortemiller responded, (Doc. 6), and Tyson replied, (Doc. 8). The matter is ripe for review.

## LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "sufficient factual matter … to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). While a "plausible" claim for relief does not require a showing of probable liability, it requires more than "a sheer possibility that a defendant has acted unlawfully." *Id.* The complaint must allege sufficient facts to allow the Court "to draw the reasonable inference that the defendant is liable." *Id.* At the motion-to-dismiss stage, the Court accepts the well-pleaded facts in the complaint as true. *Id.* The Court must also "draw all reasonable inferences" in favor of the plaintiffs. *Courtright v. City of Battle Creek*, 839 F.3d 513, 520 (6th Cir. 2016). And the Court may take notice of matters of public

record and exhibits attached to the complaint. *Elec. Merch. Sys. LLC v. Gaal*, 58 F.4th 877, 883 (6th Cir. 2023).

## LAW AND ANALYSIS

**A.     Equitable Tolling Permits Gortemiller's Claims.**

Before a private individual can sue an employer under Title VII, she must file a charge with the EEOC. Civil Rights Act of 1964 § 706(e) (Civil Rights Act), 42 U.S.C. § 2000e-5(e). If the EEOC then dismisses the charge or does not act on it within 180 days, the EEOC notifies the charging individual via a right-to-sue letter. Civil Rights Act § 706(f)(1), 42 U.S.C. § 2000e-5(e). The charging individual must then file suit within ninety days after receiving the notice. *Id.*

Gortemiller does not dispute that she failed to file her Complaint within ninety days of receiving her right-to-sue letter. She admits that she received her right-to-sue letter on May 16, 2023, and did not file her Complaint until August 15, 2023—ninety-one days later. (Doc. 2 ¶ 40, #11). She argues, however, that Title VII's ninety-day statute of limitations should be equitably tolled by the filing of the civil cover sheet on August 14, 2023. (*See* Doc. 6, #87). The Court agrees.

Title VII's requirement that a charging individual file suit within ninety days of receiving a right-to-sue letter is not jurisdictional and may therefore be equitably tolled. *Seay v. Tennessee Valley Authority*, 339 F.3d 454, 469 (6th Cir. 2003). Equitable tolling lies within the Court's discretion and the Court should evaluate the propriety of equitable tolling on a case-by-case basis. *Id.* Factors the Court should consider include: (1) lack of knowledge (constructive or actual) of the filing

6

requirement or the receipt of the right-to-sue letter; (2) diligence in pursuing one's legal rights; and (3) prejudice to the defendant. *See id.*; *Fort v. State of Ohio Dep't of Rehabilitation and Corrections*, 22 F. App'x 494, 496 (6th Cir. 2001). And filing an inadvertently defective pleading during the statutory period is often evidence of a party's diligence. *See Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 96 (1990).

Considering those factors here, the Court finds that equitable tolling is warranted. Gortemiller does not claim ignorance of the filing requirement and admits she received her right-to-sue letter on May 16, 2023. (Doc. 2 ¶ 40, #11). So the first factor is not relevant here. As to diligence, Gortemiller's counsel attached an affidavit to Gortemiller's response which stated that he attempted to file the Complaint on time and believed he had done so. (Doc. 6-1, #98–99). In that affidavit, he maintains that he failed to file the Complaint by accident due to difficulties with the Court's electronic filing system. (*Id.*). It was only when he checked the docket the next day—August 15, 2023—that Gortemiller's counsel realized his error. So he filed the Complaint immediately, but it was a day late. (*Id.* at #99).

Before addressing the timeliness issue, though, the Court starts with a side issue. Although Tyson did not challenge the permissibility of attaching an affidavit to Gortemiller's response, the Court declines to consider it because it is inappropriate to consider facts outside the pleadings at the motion-to-dismiss stage. *Perez v. Harbor Freight Tools*, No. 15-cv-05983, 2016 WL 4734635, at *3 (E.D.N.Y. Sept. 9, 2016).

In the end, though, that matters little, as the record itself supports a reasonable inference that Gortemiller was diligent in pursuing her rights. As already

stated, the civil cover sheet was filed on August 14, 2023—the last day of the ninety-day period. And the manner in which he filed that civil cover sheet strongly suggests that Gortemiller's counsel thought he had filed the Complaint as well. Typically, a plaintiff files the civil cover sheet *with* the Complaint. But here Gortemiller's counsel filed it by way of a Notice, in which he noted that he "did not attach a civil cover sheet at the time of filing." (Doc. 1, #1). So even absent the affidavit attached to Gortemiller's response, the Court would have inferred that some unintended error explained his failure to have in fact filed the Complaint on that day. And because Gortemiller attempted to file a Complaint within the statutory period (and did file a civil cover sheet) the Court finds that she was diligent in pursuing her rights. So the second factor favors Gortemiller here.

Lastly, Tyson has provided no reason to believe that the one-day delay is prejudicial, and the Court sees no reason why it would be. Accordingly, the third factor favors Gortemiller as well. So the Court will apply equitable tolling.

Tyson's argument to the contrary is unpersuasive. Tyson contends that "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." (Doc. 8, #106 (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000)) (emphasis added by Tyson omitted)). Tyson then maintains that all the oversights that led to the untimely Complaint were within Gortemiller's control. (*Id.* at #106–10).

8

But Tyson's quotation of *Graham-Humphreys* to support the inflexible rule that Tyson suggests left out a crucial clarifying word. The full quotation reads: "*Typically*, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." 209 F.3d at 560–61 (emphasis added). As the word "typically" suggests, a plaintiff's untimeliness need not *always* arise solely from circumstances outside her control (although, as the Sixth Circuit stated, that is most often the case that justifies equitable tolling). Indeed, the Supreme Court itself has applied equitable tolling when a plaintiff negligently filed a suit in the wrong court. *See Irwin*, 498 U.S. at 96 n.3 (collecting cases).

The Court recognizes that Gortemiller's counsel may have fallen short when attempting to file the Complaint and civil cover sheet, and that this failure is at some level his "fault." But the Court nonetheless concludes that he showed the requisite level of diligence in attempting to meet the filing deadline. Given that Tyson has not demonstrated any prejudice, the Court will allow the required one day of equitable tolling needed to make the filing timely.

**B.  Gortemiller's Claims are Plausible.**

With that out of the way, the Court turns to Tyson's arguments on the merits. There, Tyson argues that Gortemiller has failed to state a plausible claim for relief under both Title VII and the Ohio Civil Rights Act because (1) her beliefs are insincere and (2) she suffered no adverse employment action. As described below, the

9

Court ultimately rejects that argument, but it begins by offering two observations about the correct legal framework for Gortemiller's claims.

First, both Gortemiller and Tyson agree that Gortemiller's Ohio Civil Rights Claim is governed by Title VII case law. (Doc. 2 ¶ 83, #20; Doc. 3, #68 (citing *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio C.R. Comm'n*, 421 N.E.2d 128, 131 (Ohio 1981))). So the Court will rely on Title VII case law when deciding whether Gortemiller has stated plausible claims for relief under both Title VII and the Ohio Civil Rights Act.

Second, the Sixth Circuit has recently instructed that a Title VII plaintiff need not "allege specific facts establishing a prima facie case of discrimination in [her] complaint." *Savel v. MetroHealth System*, 96 F.4th 932, 943 (6th Cir. 2024). Rather a Title VII plaintiff must merely "plausibly allege that [she was] denied a religious accommodation and treated differently because of [her] religion." *Id*. This is because the prima facie case is "an evidentiary standard, not a pleading requirement." *Id*. (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002)).

With those observations, the Court considers Tyson's arguments in turn.

### 1. Gortemiller Has Sufficiently Alleged Religious Beliefs In Support Or Her Claim.

Tyson claims that Gortemiller fails to state a plausible claim of religious discrimination because her religious beliefs are insincere. But Tyson's argument trips right out of the gate. For starters, the text of Title VII makes no mention of "sincerity." It simply prohibits any employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because

10

of such individual's … religion." Civil Rights Act § 703(a)(1), 42 U.S.C. § 2000e-2(a)(1). And insofar as Gortemiller need only plausibly allege that she was treated differently because of her religion, *see Savel*, 96 F.4th at 943, it seems she needs only to allege facts plausibly showing (1) that she *has* a religious belief, and (2) that this religious belief is connected to the disparate treatment. There is no separate requirement that she allege facts showing that she sincerely believes the alleged religious principle in her heart of hearts.

So why does Tyson think Gortemiller needs to prove her sincerity? Because it is an element of a prima facie case for a failure-to-accommodate claim. *See Bolden v. Lowes Home Centers, LLC*, 783 F. App'x 589, 597 (6th Cir. 2019); (Doc. 3, #68 (arguing that Gortemiller must plead facts to establish prima facie case)). But as the Sixth Circuit has just recently confirmed again, the prima face case is not a pleading standard. *Savel*, 96 F.4th at 943. Gortemiller has plausibly shown that she has a religious belief against taking the Covid-19 vaccination—just look at her lengthy exemption request, which is enough for present purposes.

But even if the Court were to examine sincerity at this point, the Court would find that Gortemiller has plausibly alleged that her beliefs are sincere. She spilled much ink describing her religious beliefs relating to abortion, cell cloning, and non-consensual tissue harvesting, then linking those beliefs to the production or testing of Covid-19 vaccine products. A reasonable person reading the exemption request form that she submitted to Tyson, even if they disagreed with Gortemiller's beliefs, would likely walk away with the impression that she actually holds them.

Tyson's arguments to the contrary amount to a theological debate[5] about what Gortemiller *should* believe based on Tyson's own conceptions of her fidelity to her religious authorities or her consistency within her theological framework. Tyson claims that Gortemiller has not plausibly established sincerity because (1) various Russian Orthodox or Roman Catholic clergy advocate getting the Covid-19 vaccine, (Doc. 3, #63–64); (2) her religious opposition to abortion does not require an opposition to the Covid-19 vaccine, (*id.* at #69–70); and (3) she has medical, nonreligious concerns with taking the Covid-19 vaccine, (*id.* at #70).

These arguments suffer from various logical flaws (including, but not limited to, Gortemiller never alleging she is a Roman Catholic). But the Court resolves all of them by reference to a fundamental principle underlying both Title VII religious discrimination and First Amendment Free Exercise Clause jurisprudence: A plaintiff's religious belief need not be "acceptable, logical, consistent, or comprehensible to others." *E.E.O.C. v. Union Independiente de la Autoridad de*

---

[5] For as much as Tyson seeks to go to the mat and challenge Gortemiller's beliefs on their own terms with theological reasoning, its arguments appear to proceed from a false premise. Tyson mistakenly assumed that when Gortemiller referenced church statements from other "Catholic institutions" she was necessarily claiming to be *Roman* Catholic. (Doc. 3, #62–63 (claiming that "Catholic institutions" permit the Covid-19 vaccine and citing Pope Francis for that proposition)). But "Catholic" is not necessarily synonymous with "Roman Catholic." The former is an adjective which *can* signify membership in the Roman Catholic church, but which can also merely connote unity and universality, while the latter refers exclusively to an adherent to the specific sect of Christianity headed by the Roman pope. *Compare Catholic*, MERRIAM-WEBSTER, https://perma.cc/4R4V-WKSU (defining "Catholic" as "a member of a Catholic church", or "a person who belongs to the universal Christian church"), *with Roman Catholic*, MERRIAM-WEBSTER, https://perma.cc/F668-GQ9M (defining "Roman Catholic" as "a member of the Roman Catholic Church," or "of, relating to, or being a Christian church having a hierarchy of priests and bishops under the pope, a liturgy centered in the Mass, veneration of the Virgin Mary and saints, clerical celibacy, and a body of dogma including transubstantiation and papal infallibility").

12

*Acueductos y Alcantarillados de Puerto Rico*, 279 F.3d 49, 56 (1st Cir. 2002) (quoting *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981)). Whether Tyson believes Gortemiller's beliefs are in line with her church's teachings and whether Tyson understands the connection between Gortemiller's opposition to abortion and her opposition to the Covid-19 vaccine are both irrelevant. What matters is that she has plausibly alleged that she believes it. and nothing in the Complaint shows that she is obviously lying on that front. That is enough at the motion to dismiss stage.

### 2. Gortemiller was Constructively Discharged.

The Court makes quick work of Tyson's second merits-based argument. Tyson argues that Gortemiller has failed to state a plausible claim for relief because it placed her on unpaid leave—an action that does not amount to discipline or discharge. (Doc. 3, #71–72). But the Sixth Circuit very recently found that plaintiffs in a remarkably similar situation to Gortemiller had plausibly alleged that they were constructively discharged. In *Savel*, the Sixth Circuit held that two plaintiffs who submitted a religious exemption request to their employer from its Covid-19 vaccination mandate had plausibly alleged they were constructively discharged when those requests were denied, and the plaintiffs were told they had forty-five days to get vaccinated or they would be terminated. 96 F.4th at 937–38, 942, 944. The court stated that the plaintiffs were constructively discharged because they were put "in the difficult position of choosing between following their religion and keeping their jobs." *Id.* at 942, 944. The plaintiffs in that case did not allege that their pay was suspended during those forty-five days.

13

Gortemiller makes an even stronger case than the plaintiffs in *Savel*. Gortemiller, like the plaintiffs in *Savel*, was given a date by which she was required get vaccinated or else face termination. And she was put in the same difficult position of choosing between "following her religion and keeping [her] job." *Id.* at 942. Moreover, Gortemiller, *unlike* the plaintiffs in *Savel*, was stripped of pay while she waited out what the Court can only describe as a probationary period. True, Tyson nominally "granted" Gortemiller's exemption request whereas the employer in *Savel* nominally "denied" the same. But what Tyson *calls* its response to the request (grant or denial) is not what matters. Rather, it is the *terms and conditions of employment* that Tyson imposes that matters for Title VII purposes. *Cf. Muldrow v. City of St. Louis*, 144 S. Ct. 967, 971, 974–75 (2024) (holding that plaintiff suffered changed in terms and conditions of employment from job transfer despite having the same rank and pay). And the terms and conditions here, as alleged by Gortemiller (which allegations the Court must accept as true for present purposes), plausibly support the theory of constructive discharge.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Tyson's Motion to Dismiss Plaintiff's Complaint (Doc. 3).

**SO ORDERED.**

May 15, 2024
**DATE**

**DOUGLAS R. COLE**
**UNITED STATES DISTRICT JUDGE**